Karen **WOODY**, Plaintiff,

v.

**CITY OF WEST MIAMI and Edmund Cooper**, Defendants.

No. 77–1934–Civ–SMA.

United States District Court,
S. D. Florida.

Sept. 13, 1979.

Donald M. Papy, Miami, Fla., for plaintiff.

Allen Clements, Jr., City Atty., Miami, Fla., for City of West Miami.

Robert M. Brake, Coral Gables, Fla., for defendant Edmund Cooper.

## MEMORANDUM OPINION AND FINAL JUDGMENT

ARONOVITZ, District Judge.

This is an action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq., against the City of West Miami, and brought under 42 U.S.C. § 1983, against Edmund Cooper (the Mayor of the City of West Miami), in which the Plaintiff, Karen Woody, alleges that she has been denied equal employment opportunity because of her sex. Plaintiff seeks declaratory and injunctive relief, back pay, attorney's fees and punitive damages (against the Mayor). The Court, sitting without a jury, having heard the testimony, examined the evidence and received the arguments of counsel, makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Plaintiff, Karen Woody, is a female citizen of the United States and a resident of Dade County, Florida.

2. Defendant, City of West Miami, is a municipal corporation of the State of Florida located in Dade County, and is sui juris.

3. Defendant, Edmund Cooper, is a United States citizen residing in Dade County, Florida, who is and has been Mayor of the City of West Miami at all times material to the instant complaint. Mayor Cooper interviews the applicants for police officer positions with the City of West Miami Police Department and makes the hiring decisions for the police department.

4. In December, 1975, Plaintiff first applied for a position as a police officer in the City of West Miami and had an interview with Mayor Cooper at that time. A police officer position was available at the time Plaintiff applied.

5. At this December meeting, Mayor Cooper accepted Plaintiff's application and expressed (a) personal concern for Plaintiff's safety in executing the various duties of a police officer in the City of West Miami, and (b) his preference for selecting 20-year retired service veterans since (i) their retirement income complemented the low-paying policeman's pay and made them less eager to transfer to a higher paying job, and (ii) their service training insured their successful completion of the police academy training program.

6. On or about January 6, 1976, Plaintiff talked again with Mayor Cooper and was told by him that he could not hire a female as a police officer at that time but that he might in the future.

7. On January 7, 1976, Plaintiff filed a Charge of Sex Discrimination against the Defendants with the Metropolitan Dade County Fair Housing and Employment Appeals Board and the United States Equal Employment Opportunity Commission.

8. On January 14, 1976, Mayor Cooper hired Tom Lindquist, a retired 20-year service veteran for the available police officer position. Lindquist had been interviewed by Mayor Cooper prior to Plaintiff's application. There was a job opening as police officer between the time of Plaintiff's first application, on December 15, 1975, and sometime in January, 1976, when Tom Lindquist, a male, was hired for the position.

9. Plaintiff received her Right to Sue Notice from the Department of Justice in March, 1977. All counsel herein have stipulated that Plaintiff exhausted all administrative remedies prior to filing this lawsuit.

10. Plaintiff, in response to a newspaper advertisement, filed a second written application for employment with the City of West Miami in May, 1977.

11. Plaintiff filed suit in this Court on June 20, 1977, and Defendants were served with the complaint on June 22, 1977.

12. Mary Davis was hired as a City of West Miami police officer on July 18, 1977, and was the first female hired as a police officer in the thirty-year history of the City of West Miami.

13. The City of West Miami's hiring policy was not based on a veteran's preference statute. Mary Davis was hired at a time when at least three certified police officers who were also veterans had applied for the position filled by Mary Davis.

14. Defendants knew that Plaintiff was interested in a City of West Miami police officer position even after her first application because (a) Mayor Cooper was notified that Plaintiff had filed charges with the EEOC; (b) Plaintiff telephoned Mayor Cooper several times about her initial application; (c) Plaintiff filed a second job application; and (d) Plaintiff filed the instant lawsuit.

15. Plaintiff was not considered for new City of West Miami police officer job openings that became available after her first job application because of her filing of both charges of discrimination with the EEOC and the instant lawsuit.

16. Prior to the filing of this lawsuit, the City of West Miami ran newspaper advertisements in the *Miami Herald* and *Miami News* for police officer positions calling for twenty-year retired servicemen. The City of West Miami changed its advertising for police officers after this lawsuit was filed; the present ads state that the City of West Miami is an Equal Opportunity Employer.

17. Plaintiff has earned less since January, 1976, than she would have as a police officer with the City of West Miami. From January 14, 1976, through June, 1979, the period for which Plaintiff is entitled to backpay, Plaintiff would have earned $37,-000 as a police officer with the City of West Miami. Plaintiff's actual earnings during this period totaled $25,800.

18. The Court finds that the City of West Miami discriminated against Plaintiff in her application for employment as a police officer by treating her differently because of her sex.

19. Although the City of West Miami urges that its "policy" of hiring retired 20-year service veterans as police officers is a business necessity which justified its re-

fusal to consider Plaintiff for the vacant police officer position, the Court cannot make such a finding. The policy of hiring 20-year retired service veterans was not necessary to the safe and efficient operation of the City of West Miami Police Department especially in view of the fact that the policy was discarded, and not reinstated, at or about the time of filing of this lawsuit.

20. There is ample evidence that the City of West Miami has no clearly ascertainable job standards other than the equivocal "best qualified" criterion, which in terms of its consequences, operated to discriminate against the Plaintiff because of her sex.

21. The City of West Miami conducted no job analysis to determine the traits necessary to successful police officer job performance in its locale.

22. The City of West Miami uses no written tests for applicants for police officer.

23. The evaluating authority (the Mayor) had no written job qualifications (other than those state qualifications for employment as a police officer pursuant to Florida Statute Section 943.13) nor written job guidelines on those skills and traits for which the City was searching to guide his selection of new police officers. None of the subjective criteria utilized by the Mayor were assigned weights and his comparative judgments between candidates were subject to whim. The Mayor had no police experience or law enforcement or criminal justice training upon which to base his employment decisions.

24. Plaintiff met and now meets all of the statutory qualifications for police officers in the State of Florida pursuant to Florida Statute Section 943.13.

25. Plaintiff has been subjected to greater scrutiny than other applicants for City of West Miami police officer positions. For example, Mary Davis (a female), who was hired, failed the City of Miami Police Test; Dori Palant (a female), who also was hired, failed the North Miami Police Civil

Service Test. Plaintiff was challenged for not having passed the same test Mary Davis failed although more than 80% of those taking that test failed it.

26. The City of West Miami's hiring policy for its police officers has been completely subjective and vague. The hiring of Mary Davis and Dori Palant was not based on requirements which were made known beforehand.

27. Defendants have filled five police officer positions since the Plaintiff filed her first application.

## CONCLUSIONS OF LAW

During the time involved herein, the City of West Miami (hereinafter "the City") was an "employer" as that term is defined in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

This Court has jurisdiction over the subject matter and the parties.

### I. *THE TITLE VII CHARGE*

Plaintiff's position in the Title VII portion of this lawsuit is that the City's subjective hiring procedures for its police officer positions resulted in discrimination against women in general and against her in particular. She argues the procedure has resulted in a disparate impact on female applicants and in disparate treatment against her—all in violation of Title VII.

### A. Disparate Impact:

■ *Griggs v. Duke Power Company,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) sets out the requirements for establishing a prima facie case with regard to the disparate impact theory of discrimination. Plaintiff must show that the subjective hiring procedures utilized by the City have a substantial disparate impact on the protected class of women. Where such a showing is made, only then does the defendant have the burden of going forward to show that this practice does not have this substantial disparate impact which is indicative of illegal discrimination.

■ Subjective hiring procedures are subject to close scrutiny by the Courts but they are in no way violative of Title VII *per se. Rowe v. General Motors Corporation,* 457 F.2d 348 (5th Cir. 1972). Although statistics or other evidence may establish the discriminatory effect on the protected group, Plaintiff understandably did not present such evidence. Karen Woody was the first woman applicant for a police officer position in the City's thirty-year history. Moreover, the City's police force is small and only five police officers have been hired since Plaintiff applied over three years ago. In short, the statistical universe is too small and statistical evidence would have little if any significance in predicting disparate impact on the protected group. *Harper v. Trans World Airlines, Inc.,* 525 F.2d 409 (8th Cir. 1975); *Robinson v. City of Dallas,* 514 F.2d 1271 (5th Cir. 1975); *Ochoa v. Monsanto Company,* 473 F.2d 318 (5th Cir. 1973). Furthermore, the fact that the City hired its first female police officer (a) in 1977 and (b) after this lawsuit was filed, does not show that the subjective criteria employed by the City to select new police officers resulted in a disparate impact on women applicants.

After careful consideration of the evidence presented, this Court finds that Plaintiff has failed to establish a prima facie case of discrimination against women applicants for the position as police officer.

### B. Disparate Treatment:

■ The order and allocation of proof in an individual discrimination case under Title VII was defined in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined in *Furnco Const. Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). Plaintiff has the initial burden of establishing a prima facie case of sex discrimination. Upon meeting this burden, an inference of discrimination is raised. The burden then shifts to the employer to establish by a preponderance of the evidence that it had a legitimate, nondiscriminatory reason for not employing the plaintiff. *Turner*

*v. Texas Instruments, Inc.,* 555 F.2d 1251 (5th Cir. 1977). Once the employer meets this burden, plaintiff has the opportunity to introduce by a preponderance of the evidence that the proffered justification is merely a pretext for sex discrimination. Finally, a Title VII plaintiff need not prove intentional discrimination "even when the employer is a governmental agency, . ." in order to be afforded relief in a Title VII action. *Scott v. City of Anniston, Ala.,* 597 F.2d 897, 898 (5th Cir. 1979).

▇ The Plaintiff has established a prima facie case of discrimination against her by showing that she is protected by the statute, that she applied for an available police officer position with the City for which she was qualified, that despite her qualifications she was rejected, and, after being refused the job, the City continued to seek applicants having her qualifications.

In establishing its rebuttal burden that its employment decision not to hire Plaintiff was not based on the illegitimate consideration of sex, the City maintained that its subjective police selection criteria were a job-related legitimate business necessity which warranted selecting a better-qualified 20-year retired service veteran for an available police officer job.

As a small city with limited funds, the City maintained that its hiring of 20-year retired service veterans provided the City with police officers who would (1) stay on the job despite the low pay because of their service retirement pay; (2) pass the Police Academy training course; and (3) provide the City with a well-trained and experienced police force. In light of the fact that Plaintiff was the first female police officer applicant, the burden then shifted to the Plaintiff to prove by an evidentiary preponderance that the City's apparently valid reason was a pretext.

In evaluating the facts presented, this Court is guided by the Fifth Circuit's admonition in *Pond v. Braniff Airways, Incorporated,* 500 F.2d 161, 165–66 (5th Cir. 1974):

Of course it is true . . . that where an employer can demonstrate no discrimination in the selection or advancement of employees, but rather that the employer in the best of faith merely weighed each person's talents then choosing the man over the woman (or the woman over the man), no case is made out under Title VII. (footnote omitted) But the inquiry does not necessarily stop here. Courts must be extremely careful to determine that the reasons given for selecting a male applicant over a female applicant are not simply a ruse disguising true discrimination. Courts must further carefully scrutinize the employer's explanations for its conduct once the aggrieved employee has proved a prima facie case of discrimination. If the capacity or competency distinction upon which the employer's selection is based inheres in the nature of an employee as a man or a woman, or if the employer in any way permits stereotypical culturally-based concepts of the abilities of people to perform certain tasks because of their sex to creep into its thinking, then Title VII will come to the employee's aid. (Footnote omitted)

▇ This is a case where plaintiff was informed by the City through its Mayor that there were doubts as to the ability of a woman to handle the job as police officer. "It is now well recognized that employment decisions cannot be predicated on mere 'stereotyped' impressions about the characteristics of males or females. (footnote omitted) Myths and purely habitual assumptions about a woman's inability to perform certain kinds of work are no longer acceptable reasons for refusing to employ qualified individuals . . . ." *City of Los Angeles, Dept. of Water v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 1375, 55 L.Ed.2d 657 (1978). Plaintiff was not considered on the basis of her own qualifications and characteristics but was rejected because of her sex and certain stereotyped presumptions about women in positions having the potential of immediate danger. In addition, it is clear that Plaintiff was not afforded subsequent consideration for later available police officer positions because of (a) her having filed a sex discrimination charge against the City with the EEOC, and (b) her

filing of the instant lawsuit. *See* 42 U.S.C. Section 2000e–3. Furthermore, the justification advanced for denying Plaintiff an available job for which she was qualified—namely, that the City gave a hiring preference to retired 20-year service veterans—was a coverup for this sexual discrimination since: (1) the policy was not uniformly applied; (2) the policy was not shown to be necessary to the safe and efficient operation of the City of West Miami Police Department; (3) the policy was quickly discarded following the initiation of this lawsuit; and (4) the first policewoman (who was not a veteran) was hired immediately following the filing of this lawsuit. .

The evidence shows that what was innocently used by the City as a screening device to select the best-qualified applicant from a previously all-male pool of applicants became a pretext to discriminate against Karen Woody on account of her sex and to retaliate against her for having opposed this practice of illegal discrimination by the filing of charges with EEOC and initiating this lawsuit. 42 U.S.C. Section 2000e–5(g) (Supp.1973) is the statutory authorization for awarding relief in cases of employment discrimination under Title VII. In *Rowe, supra,* the Fifth Circuit interpreted the intent requirement of this relief section as meaning "that the activity or practice was *not accidental." Id.* at 359–60 (emphasis provided). None of the evidence presented suggests that the City's practice of illegal discrimination was in any way accidental. As a matter of law, therefore, this Court finds that Plaintiff has established she was discriminated against because of her sex and that the intent requirements of *Rowe* have been met thereby requiring this Court to award appropriate monetary and equitable relief.

Although it is clear that the City hired qualified women applicants as police officers after Plaintiff was unlawfully discriminated against in regard to her applications,

this Court finds that the record in this case establishes that the City still hires its police officers through the subjective hiring process devised by Mayor Cooper. This Court must recognize that hiring procedures depending entirely upon subjective evaluation is a ready mechanism for sex discrimination against future female police officer applicants. Therefore, a suitable injunction should issue.

■ *Albemarle Paper Company v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) sets forth the parameters of this Court's discretion to award backpay in Title VII cases, where, as here, the employer has engaged in an unlawful discriminatory employment practice. The Supreme Court held that upon a finding of unlawful discrimination backpay should be denied only for a reason that will not "frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Id.* at 2373. Recently, the Supreme Court commented that "[t]he *Albemarle* presumption in favor of retroactive liability can seldom be overcome, . . . ." *City of Los Angeles, supra,* at 1381. It is the opinion of this Court that the defense of laches and related unreasonable delay defenses remain open to rebut this presumption; the City, however, offered no such evidence and therefore backpay shall be awarded to Plaintiff.

■ 42 U.S.C. Section 2000e–5(g) (Supp. 1973) applies in determining the appropriate backpay period. Therefore, in the case *sub judice,* Plaintiff's backpay period commenced on January 14, 1976, the date the available position for which Plaintiff originally applied was filled, and terminated on July 10, 1979, the date the Plaintiff indicated in open court that she is now no longer interested in being a police officer with the City.[1] Finally, this Court, acting

---

1. Plaintiff informed this Court that she is seeking backpay from January 14, 1976, through June 30, 1979, only. Therefore, this Court holds that January 14, 1975, through June 30, 1979, is the appropriate backpay period. The final backpay award shall be reduced by the amount of Plaintiff's interim earnings earned during this backpay award period. 42 U.S.C. Section 2000e–5(g). (Supp.1973).

as a court of equity, holds that Plaintiff's acknowledgment of this fact constitutes a waiver of an offer of employment from the City of West Miami Police Department.

A prevailing plaintiff in a Title VII case will be awarded reasonable attorney's fees unless special circumstances would render such an award unjust. *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); *Albemarle Paper Company, supra.* No such special circumstances having been shown, this Court finds as a matter of law that Plaintiff is entitled to an award of reasonable attorney's fees from the City to be computed in accordance with the dictates of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974).

## II. *THE 1983 DISCRIMINATION CHARGE*

Plaintiff charges that Mayor Cooper: (1) promulgated and maintained the policy of refusing to hire females as police officers and hiring only 20-year retired service veterans; (2) acted under color of said regulation, custom or usage of the City of West Miami to wilfully and maliciously discriminate against Plaintiff in regard to employment opportunities with the City of West Miami Police Department; and (3) thereby deprived Plaintiff of rights secured by the United States Constitution in violation of 42 U.S.C. § 1983.

▇ The Supreme Court's recent decision in *Monell v. Dept. of Soc. Serv. of City of N. Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) makes it clear that local government officials sued in their official capacities are "persons" under § 1983 and "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Id.* at 2036.

▇ Defendant's argument that Plaintiff has not shown she has been deprived of a right secured by the Constitution and the laws of the United States in that no one has a constitutional right to public employment may be dealt with briefly. "[T]he theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected." *Keyishian v. Board of Regents of U. of St. of N. Y.,* 385 U.S. 589, 87 S.Ct. 675, 685, 17 L.Ed.2d 629 (1967). "To state that a person does not have a constitutional right to government employment is only to say that he must comply with reasonable, lawful and nondiscriminatory terms laid down by the proper authorities." *Slochower v. Board of Higher Ed. of City of N. Y.,* 350 U.S. 551, 76 S.Ct. 637, 639–40, 100 L.Ed. 692 (1956). Sex-based discrimination unsupported by a reasonable basis is violative of the Equal Protection Clause of the United States Constitution and the right to be free from such discrimination can be protected under Section 1983.

▇ Upon review of the evidence in this case this Court is convinced that the custom of preferring 20-year retired service veterans for available police officer positions in the City of West Miami does not serve important governmental objectives and is not substantially related to achievement of those objectives. *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). *See also Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975). Furthermore, the issue of a veteran's preference in relation to charges of sex-based discrimination under 1983 has recently been addressed by the Supreme Court in *Personnel Administrator of Massachusetts, et al. v. Feeney,* —— U.S. ——, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). The Supreme Court held that Massachusetts, in statutorily granting an absolute lifetime preference to veterans for state civil service positions, did not discriminate against women in violation of the Equal Protection Clause of the Fourteenth Amendment. The

Court employed a two-step inquiry.[2] *Id.* —— U.S. at ——, 99 S.Ct. 2282. First, is the custom neutral or not gender based? Since Plaintiff was the first female police officer applicant and no evidence was adduced at trial to establish the Mayor's custom did not or would not include 20-year retired female service veterans, this Court finds that the custom was neutral. Second, if not based upon gender, does the adverse effect of the custom on Plaintiff reflect invidious gender-based discrimination? Here, the focus of the inquiry narrows to finding discriminatory intent since " . . . purposeful discrimination is 'the condition that offends the Constitution.' " *Id.*

■ " 'Discriminatory purpose,' however, implies more than intent as volition or intent as awareness of consequences (citation omitted). It implies that the decisionmaker, . . ., selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group. (footnote omitted)" *Id.* —— U.S. at ——, 99 S.Ct. at 2296. Upon review of the evidence, this Court concludes that such a discriminatory purpose was a motivating factor in Mayor Cooper's decision not to offer Plaintiff an available police officer job. Although it is clear that Mayor Cooper's genuine concerns for Plaintiff's safety rather than any purpose to deny her equal employment opportunity prompted him to initially reject Plaintiff's application, the Mayor's later actions in response to subsequent events indicate an intent to deny Plaintiff a job because of her sex. Mayor Cooper exercises sole authority and control over the hiring of new police officers for the City of West Miami and as agent for the City he was responsible for the subsequent hiring decisions that revealed official sex discrimination against Karen Woody.[3]

This Court finds as a matter of law therefore, that Plaintiff has established a cause of action under 42 U.S.C. § 1983, and is thereby entitled to certain equitable and legal relief which is separate, distinct and independent from those remedies available under Title VII. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

■ For the reason enumerated above in regard to this Court granting injunctive relief under Title VII against Defendant City of West Miami, this Court finds as a matter of law that a suitable injunction should and will issue against Mayor Cooper enjoining any future sex discrimination in regard to employment opportunities with the City of West Miami Police Department.

Plaintiff is entitled to an award of backpay under her § 1983 claim against the Mayor. This award shall cover the same period of time and be subject to the same offset for interim earnings as is discussed above concerning Title VII relief. However, Plaintiff has failed to show that the pretext of preferring 20-year retired service veterans was carried out with such bad faith or in wilful or gross disregard for Plaintiff's rights so as to merit an award of punitive damages.

---

**2.** Although the case *sub judice* does not involve a veteran's preference statute as did *Feeney, supra,* this Court finds that the two-step inquiry used by the Supreme Court to evaluate the validity of the statutory classification in *Feeney* is germane to this Court's evaluation of the validity of Mayor Cooper's custom of preferring 20-year retired service veterans in relation to Plaintiff's right to equal employment opportunities with the City of West Miami Police Department.

**3.** The Fifth Circuit has recently decided that in an action for liability under a civil rights statute, a state officer like Mayor Cooper is entitled to qualified immunity for his official action provided his actions "were committed in 'good faith'—without malice or without knowledge that a constitutional violation would result—. . . ." *Crowe v. Lucas,* 595 F.2d 985, 990 (5th Cir. 1979). Mayor Cooper's actions were not committed with subjective intent to harm Plaintiff. On the evidence presented, however, Mayor Cooper's hiring decisions and refusal to consider Plaintiff as an applicant past January 6, 1976, mandate the conclusion that, at the least, the Mayor should have known that his official action with regard to Plaintiff's applications violated her constitutional right to be free from sex discrimination in seeking public employment. *Id.* Mayor Cooper is thereby not entitled to qualified immunity for his official action.

Plaintiff, for the same reason enunciated earlier in this opinion, has likewise waived any right under § 1983 to be offered a police officer position by Mayor Cooper.

42 U.S.C. § 1988 provides for the award of attorney's fees in any action to enforce a provision of, *inter alia,* 42 U.S.C. § 1983. Recently, the Fifth Circuit has decided that section 1988 mandates that the prevailing plaintiff in an action brought pursuant to one of the statutory sections included in the statute should ordinarily recover attorney's fees unless special circumstances would make such an award unjust. *Criterion Club of Albany v. Board of Com'rs, etc.,* 594 F.2d 118 (5th Cir. 1979); *Crowe, supra.* Upon review of the evidence, this Court finds no special circumstances that would make such an award unjust and accordingly Plaintiff is entitled to recovery of her reasonable attorney's fees in pursuing her claim under § 1983 which shall be calculated in accordance with *Johnson, supra.*[4]

Based on the foregoing Findings of Fact and Conclusions of Law, it is hereby

ORDERED AND ADJUDGED as follows:

1. That the City of West Miami and Mayor Edmund Cooper, and their agents, employees, successors and those acting in concert or participation with them be permanently enjoined from maintaining or continuing any policy, practice, custom or usage which has the purpose or the effect of discriminating against and/or interfering with the rights of Plaintiff and/or female persons because of their sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq.,* and other laws.

2. That the Plaintiff be and is hereby awarded backpay for the period commencing January 14, 1976, and terminating July 1, 1979, for which Defendants City of West Miami and Edmund Cooper are jointly and severally liable.

3. That the backpay award is to be $11,200.00, which is the difference between what the Plaintiff would have earned as a City of West Miami Police Officer and what Plaintiff actually earned during the applicable period.

4. That the Plaintiff be and is hereby awarded her costs in this action including reasonable attorney's fees for which Defendants City of West Miami and Edmund Cooper are jointly and severally liable.

5. Counsel for the parties are directed to meet and confer within fifteen (15) days of the entry of this Judgment for the purpose of agreeing upon costs and reasonable attorney's fees. Absent such an agreement, counsel for the Plaintiff is directed to file with this Court an affidavit outlining the time for which attorney's fees are claimed and an itemization of costs; the Defendants are directed to file a memorandum with the Court setting forth the bases on which they disagree with the attorney's fees and costs sought by Plaintiff. The respective documents required herein shall be filed within twenty (20) days of the entry of this Judgment. In the event this Court finds it necessary, an evidentiary hearing may be held to determine the appropriate award of attorney's fees and costs.

A separate Final Judgment shall be entered in accordance herewith.

4. In post-trial motions, Defendant Cooper argued that Title VII supersedes actions under 42 U.S.C. § 1983, based on the holding in *American Federal Savings and Loan Ass'n v. Novotny,* —— U.S. ——, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). *Novotny* applied only to actions brought under 42 U.S.C. § 1985(3), not to actions brought under 42 U.S.C. § 1983. *See* the Court's Order on Post-Trial Motions.