**Phyllis A. ANDERSON, Plaintiff,**

v.

**CITY OF BESSEMER CITY, NORTH CAROLINA, Defendant.**

**No. C–C–81–204–M.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

Feb. 16, 1983.

Jonathan Wallas and Ronald L. Gibson, Chambers, Ferguson, Watt, Wallas, Adkins & Fuller, P.A., Charlotte, N.C., for plaintiff.

Philip M. Van Hoy, Siegel, O'Conner & Kainen, P.C., Charlotte, N.C., Henry Whitesides and Arthur C. Blue, III, Whitesides, Robinson & Blue, P.A., Gastonia, N.C., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

McMILLAN, District Judge.

### PRELIMINARY STATEMENT

This case was tried without a jury on September 13 and 14, 1982. On September 16, 1982, this court filed a memorandum of decision finding that "plaintiff was denied equal opportunity to compete for the job of Recreation Director for the defendant municipal corporation, and was denied the job because of her sex." The court supported this finding with a review of the key evidence and a resolution of the central issues of credibility, and requested that plaintiff's counsel draft "an enlarged version of this memorandum in the form of proposed findings of fact, conclusions of law, and an appropriate judgment."

On November 15, 1982, the court received plaintiff's proposed findings and conclusions. On November 18, 1982, the court

invited defendant to respond by pointing to the portions of the proposed findings not supported by the record, by providing references to the transcript and exhibits which support the defendant's position, and by suggesting language which should be substituted for that used by the plaintiff. On December 10, 1982, defendant filed a 15-page response to the proposed findings, including helpful references to the transcript.

Having reviewed the trial transcript and exhibits and having considered all of the evidence, and the proposals and arguments of counsel for both parties, the court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. On May 18, 1981, plaintiff Phyllis A. Anderson filed this suit against defendant, Bessemer City, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. for discrimination on the basis of sex.

2. Plaintiff is a female citizen and resident of Bessemer City, North Carolina. The defendant, City of Bessemer City, is a North Carolina municipal corporation.

3. During February or early March, 1975, the position of Recreation Director for Bessemer City became vacant. Defendant advertised the position through the local newspaper, the Gastonia Gazette, and by word of mouth.

4. The Mayor of Bessemer City appointed a committee to select a new Recreation Director. The committee consisted of Auddie Boone, Josiah Butler, William McClellan, Frank Nichols, and Timothy Helms. Ms. Boone, the only woman on the committee, was chairperson.

5. Eight persons applied for the position; plaintiff Anderson was the only woman applicant. She submitted a letter of application and a resume to the City Manager, William Metcalf, on March 16, 1975.

6. Some time before applying for the job, plaintiff talked to Neil Barnes, who was then the Superintendent of Water Works for the city, who told her that the position was "wrapped up" by another candidate. In response to that conversation, plaintiff included the following paragraph in her application letter:

I realize you will probably be giving stronger consideration for a male to fill this position. In this light, I would request you review all qualifications equally, realizing women are assuming positions of leadership and responsibility in industry and government equal to those held by men.

Before submitting her application, Anderson also talked to Boone who told her that anyone could apply for the job (TT 5).

7. Of the remaining seven applicants, one man, Bert Broadway, was asked by Butler to apply. Another applicant, Donald Kincaid, was notified by Butler that the position was vacant (TT 82). Butler asked two other males, who he believed were qualified, to apply, but they declined (TT 106). Butler did not contact either of two women whom he believed to be qualified to ask them to apply (TT 106).

8. The committee interviewed all eight applicants on March 25, 1975. Each member of the committee had access to the application of each candidate. The committee received no written guidelines from the defendant for selecting the Recreation Director. No description of job duties was provided either the committee or the candidates. The committee never formulated its own selection criteria except to agree informally that the person selected must live within the city or be willing to relocate there. Each committee member had one vote.

9. During plaintiff's interview with the committee, she was asked about the program she would implement as Recreation Director. She was also asked (a) if she realized there would be night work involved; (b) if she realized there could be travel throughout the county and meetings with other directors; and (c) how her husband felt about her applying for the job (TT 8). No other candidate was seriously asked a similar question (TT 48, 65). After becoming annoyed from hearing these ques-

tions asked only of Anderson, Boone facetiously remarked to Kincaid "and your new bride won't mind?" (TT 66).

The court has carefully considered the conflicting testimony of Nichols that all candidates were asked about night work (TT 119). Kincaid could not remember being asked a question about night work, although he remembered commenting on the subject (TT 77); Butler remembered the question being asked of Anderson and of Kincaid "in a way" (TT 101). After hearing live testimony and considering the credibility of the different witnesses, this court concludes as a fact that no serious question about night work or reaction of spouses was asked of any candidate besides the plaintiff.

Further, the plaintiff did not begin the interview by stating that the committee would not select her because she is a woman. No committee member besides Helms remembered such a statement and plaintiff explicitly denied making the statement (TT 28).

10. After reviewing the applications and completing the interviews, the committee generally considered Bert Broadway to be the most qualified applicant. Broadway was a Recreation Director in Cramerton and had taken five electives in physical education during college (TT 93, exhibit 19). However, Broadway was eliminated from consideration during the interview because he said that he would not relocate to Bessemer City (TT 94).

11. After Broadway was eliminated, the only two candidates considered by the committee to be qualified were Anderson and Kincaid (TT 100, 120, 131, 61). The remaining candidates were men who lived in the community, but had only participated in athletics—they had no educational training or experience to prepare them for the position (TT 100, 131). The vote was 4–1 for Kincaid; the four male members of the committee voted for Kincaid; Ms. Boone voted for the plaintiff. Kincaid was offered and accepted the job.

12. Shortly after Kincaid's selection, Boone told the plaintiff that she thought plaintiff was the best qualified candidate and that the committee members had chosen Kincaid because he was male. Plaintiff then filed a charge of discrimination with the Equal Employment Opportunity Commission on March 31, 1975. A notice of right-to-sue was issued February 19, 1981, and plaintiff initiated this proceeding within ninety days of her receipt of that notice.

13. At trial, the male committee members said that they chose Kincaid over Anderson because he was more qualified because of his educational background. This court finds as a fact that plaintiff was more qualified for the job of Recreation Director based on the totality of her educational, employment, and recreation experience.

(a) While no job requirements were provided to the committee for making their selection of Recreation Director, this court finds from the testimony of the committee members at trial that the job of Recreation Director was to create and implement a well-rounded recreation program for all citizens in the community. This job included a wide range of duties such as organizing and directing programs in athletics, art, music, dance, drama, and crafts; teaching and communicating with persons of all ages, backgrounds, and interests; managing community facilities; recruiting and selecting personnel; developing budgets and handling funds; and planning and implementing future programs (TT 49, 79; exhibit 8). There was no educational requirement for the job; rather, the committee was searching for the person with the best background to perform the varied duties of the position (TT 53, 115).

(b) In March, 1975, when the selection was made, plaintiff was a 39-year-old woman, in good health, with a 1973 B.A. degree from Sacred Heart College in elementary education, and nearly twenty years of experience in various jobs, civic activities and recreation. In 1973–74, plaintiff was a third grade teacher in the Carr School in Dallas; she also had ten years of experience in substitute teaching in all grades in the Gaston County public schools. As part of her duties as a teach-

er she taught her own physical education classes, planned activities and trips, collected and budgeted money, and communicated with students, parents, and other teachers (TT 18–20).

Plaintiff was an experienced public speaker through her activities in PTA and as President of the Exchangette Club, an organization which raises money to help crippled children (TT 17, 41). She frequently planned and organized activities, recruited people to carry out projects, and handled and budgeted money through her involvement in the Exchangettes, the Jaycette Club, and the Order of the Eastern Star (TT 18, 42).

Besides her experience teaching, plaintiff had direct experience in recreation as a member of the Broughton Hospital recreation department in 1956 and 1957. There she planned and directed ballgames, dances, and crafts and supervised other employees who helped implement these activities (TT 15). For this work, she received a North Carolina State Recreational Director Certificate in 1957. Plaintiff personally has played softball, basketball, and soccer (TT 19) and followed her sons through sports, including attending many practices (TT 20–21). She has a basic knowledge of and enjoys all sports (exhibit 10). To receive her elementary education degree, plaintiff was required to take courses in physical education to learn how to set up activities and how to supervise them (TT 22). Plaintiff also has training in decoupage, plays the piano, and has been a music director (exhibit 10).

Plaintiff's other education includes an associate degree from Sacred Heart College in 1963 or 1964; government and history courses at Gaston College in 1973 and 1974; logic and guidance courses at Belmont Abbey College in 1974; and a Dale Carnegie course in public speaking. Plaintiff also has bookkeeping experience through her job as a receptionist for three doctors in 1959 and experience with the public as a salesclerk at Belk Stores during 1961–1963 (TT 15–16).

(c) In March 1975, Donald Kincaid was twenty-four years old, having graduated the previous spring from Appalachian State University with a B.S. degree in health and physical education. He did his student teaching at Mountain City High School in Tennessee (exhibit 11). From approximately June 1974 to March 1975 he worked in the finance department of the Commercial Credit Corporation. He also sold life insurance for a couple of months immediately following completion of his degree requirements at school. Kincaid played football, baseball, and basketball in high school; he participated in intramurals during college (TT 74, 85). He had experience coaching little league basketball in Bessemer City (TT 75). He mentioned on his resume that he enjoyed coaching, reading and music (exhibit 11).

At the time of the interview, Kincaid had no experience supervising other employees, no experience in public speaking, and no experience in planning or directing the activities of a recreation department. He had helped Butler schedule basketball games for the little league, but he had no hands-on training or experience in creating and setting up a broad range of programs. He had no experience teaching arts, crafts or music. He had never raised money or recruited personnel. Kincaid's only experience teaching sports was the required student teaching and coaching little league basketball in the winter of 1975.

(d) On the basis of their relative qualifications, this court finds as a fact that plaintiff was more qualified than Kincaid to perform the broad range of duties required of a recreation director. She had direct experience teaching, supervising, directing programs, raising money, speaking to the public, handling budgets, and planning activities, that Kincaid did not have. Both candidates knew the rules of most sports; both had actively participated in sports. Kincaid had a degree in health and physical education; Anderson had a degree in education, for which she was required to take classes in physical education. The selection com-

mittee did not inquire into the content of either candidate's courses (TT 84, 108). While Kincaid had personally played more of the traditionally male dominated sports, Anderson had both participated in and taught a broad range of activities including sports, music, dance, and crafts. The combination of plaintiff's teaching degree, work experience, civic activities, and knowledge of recreation made her more qualified than Kincaid to perform the duties of the Recreation Director.

14. Plaintiff, the more qualified candidate, was not selected for the position of Recreation Director because of her sex. The selection committee had no standards or criteria by which to choose the new director, except for the informal residence requirement. The subjective decision making process left the committee members free to use their own biases in the selection. Defendant argues that the male committee members had experience in athletics, physical education, recreation, and government that qualified them to use their own knowledge in selecting between the applicants. After considering the live testimony and reviewing the evidence, this court finds that the "knowledge" of the male members of the committee included a bias toward having a male, particularly one versed in the traditionally male-dominated sports, in the position of Recreation Director. This bias is inferred from the following evidence:

(a) The only female candidate was asked questions about night work and the reaction of her spouse; those questions were not seriously asked of any male candidate. If the questions had been asked of all candidates, the defendant might reasonably claim that the inquiry about night work was job related. As it is, the questions imply a belief that women have family responsibilities that should keep them home at night. Plaintiff was not the only applicant with a family; Kincaid had a wife and child.

(b) Butler solicited applications from four males for the job (Kincaid, Broadway, Russ Bergman and Roy Pierson, TT 82, 99, 106). Although he knew two qualified women, he did not seek applications

from either of them. Butler made an assumption that the women would not want to take a cut in pay to accept the job, and he did not make that assumption with respect to the males.

(c) Nichols testified at trial that "it would have been real hard" for a lady to have run the job (TT 120). He said that he thought "my wife should be at home at night" (TT 125).

(d) The emphasis by the male committee members on the importance of a degree in health and physical education was abandoned when they explained why Broadway was their first choice. Broadway had no degree; they found him most qualified because of his work experience (TT 115). Yet the male members of the committee downplayed the significance of experience when comparing plaintiff's teaching, supervisory, and recreation experience to Kincaid's qualifications.

(e) Both Nichols and Butler emphasized the role of the Recreation Director in organizing traditionally male-dominated sports leagues. Nichols referred to the job as "Athletic" director (TT 124, dep. p. 7). Butler wanted the baseball, football, and basketball programs to be strengthened (TT 107). When Nichols was asked about his experience with running a recreation program, he responded "We looked after the baseball, football, basketball, lined the fields off, helped out at ballgames, helped officiate at basketball games, and et cetera like that" (TT 117). Neither person mentioned the broad range of recreational activities outside these sports that a director would be expected to organize and supervise.

While one committee member, Helms, claimed to have been influenced by the program Kincaid presented during the interview. McClellan testified that Anderson and Kincaid presented very similar programs (TT 112). From the testimony of Anderson and Kincaid at trial, the court finds that there was no substantial difference between the programs offered during the interview and that this explanation is pretextual (TT 8, 79).

The male members of the committee chose Kincaid, the less qualified candidate, because he was male. The explanation offered that Kincaid was more qualified because of his degree in health and physical education is pretextual. But for the discrimination based on sex, the plaintiff would have been selected for the position of Recreation Director of Bessemer City.

15. Plaintiff suffered monetary loss as a result of the denial of the Recreation Director job. Her evidence showed that her earnings from March 1975 through trial were $65,402 while the earnings of Kincaid for the same period were $95,799.

## CONCLUSIONS OF LAW

1. This action is properly before the court, the court has jurisdiction of this action under Title VII, and all procedural requirements of Title VII have been met.

2. The evidentiary standard and allocation of burden of proof applicable to this case is set forth in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), where the Supreme Court refined the basic allocation of burdens and order of presentation of proof set forth in *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. If the plaintiff succeeds in proving a *prima facie* case, the burden shifts to the defendant to *articulate* some legitimate, nondiscriminatory reason for plaintiff's rejection. 411 U.S. at 802, 93 S.Ct. at 1824. The ultimate burden of persuading the court that defendant discriminated against plaintiff remains with plaintiff. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.

3. Plaintiff's evidence satisfies her burden of showing that she applied for the position, was qualified, but "was rejected under circumstances that give rise to an inference of unlawful discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. Those circumstances include the gender stereotyped questions asked only of the plaintiff and the failure to solicit qualified men and women equally to apply for the position.

4. Defendant articulated a nondiscriminatory reason for failing to select plaintiff: that another candidate was better qualified because of his educational degree. Plaintiff may demonstrate that the proffered reason was not the true reason she was not selected either (1) directly, by persuading the court that a discriminatory reason more likely motivated the defendant; or (2) indirectly, by showing that the defendant's proffered reason is pretextual. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *McDonnell-Douglas,* 411 U.S. at 804–805, 93 S.Ct. at 1825.

5. The court concludes that the defendant's explanation is pretextual for the reasons set forth fully in the findings of fact. Plaintiff was more qualified than Kincaid to perform the broad range of duties required of a Recreation Director. The male members of the committee were biased toward selecting a male for the position as inferred from the questions about night work and reaction of her spouse asked only of the plaintiff, the failure to solicit qualified women to apply for the position, the perception that a woman would have difficulty in the position, and the emphasis on traditionally male-dominated sports to the exclusion of recreational activities for all ages and both sexes. The male members of the committee emphasized either experience or education, depending on which criteria justified the choice of a particular male candidate.

The plaintiff carried the burden of persuasion throughout and convinced this court that but for the discrimination on the basis of sex, she would have been hired as Recreation Director. The gender biases of the male members of the committee played a substantive and decisive role in the hiring decision. *Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

6. Close scrutiny is required where a hiring decision is made on subjective, unar-

ticulated criteria. In *Coble v. Hot Springs School District No. 6,* 682 F.2d 721 (8th Cir.1982), the court reversed the finding of a district court that plaintiff was not discriminated against on the basis of sex in the selection of a director of a teacher's center and remanded to the lower court with instructions to grant appropriate relief. The Eighth Circuit found that defendant's proffered explanation of lack of experience and absenteeism was pretextual and that the school district made the decision on the basis of a gender stereotype that the female teacher's family responsibility would interfere with her work performance. The court said:

> Although not illegal per se, subjective promotion procedures are to be closely scrutinized because of their susceptibility to discriminatory abuse. The mere fact that the subjective process is intended to recognize merit does not necessarily alleviate its susceptibility to discriminatory abuse. *When the evaluation is in any degree subjective and when the evaluators themselves are not members of the protected minority, the legitimacy and undiscriminatory basis of the articulated reason for the decision should be subject to particularly close scrutiny by the trial judge.* Royal v. Missouri Highway & Transportation Comm'n., 655 F.2d 159, 164 (8th Cir.1981).

682 at 726 (emphasis added).

7. Defendant may not base its employment decision on gender stereotypes or sexual bias. In *Los Angeles Dept. of Water and Power v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), the Supreme Court says, "It is now well recognized that employment decisions cannot be predicated on mere 'stereotyped' impressions about the characteristics of males or females. Myths and purely habitual assumptions about a woman's inability to perform certain kinds of work are no longer acceptable reasons for refusing to employ qualified individuals, or for paying them less." 435 U.S. at 707, 98 S.Ct. at 1374. Defendant's decision not to hire the more qualified applicant for Recreation Director is based on such stereotyped impressions of the sexes as indicated in the questions asked the plaintiff during the interview and the testimony of the male committee members at trial. Other examples of discrimination by employers based on gender stereotypes which have been found to violate Title VII are found in *Muntin v. California Parks and Rec. Dept.,* 671 F.2d 360 (9th Cir.1982) (woman denied position as a deckhand); *Williams v. Hoffmeister,* 520 F.Supp. 521 (E.D.Tenn.1981) (woman denied position as a school principal); *EEOC v. Spokane Concrete Products,* 534 F.Supp. 518 (E.D.Wash.1982) (woman denied position as a truck driver); *Woody v. City of West Miami,* 477 F.Supp. 1073 (S.D.Fla.1979) (woman denied position as a police officer).

8. As a matter of law, the court concludes that plaintiff has been discriminated against because of her sex in violation of Title VII, and is entitled to be made whole. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *White v. Carolina Paperboard Corp.,* 564 F.2d 1073 (4th Cir.1977). Plaintiff is entitled to back pay based on the difference between her earnings and Kincaid's earnings in the Recreation Director position. *See EEOC v. Korn Industries, Inc.,* 662 F.2d 256 (4th Cir.1981). Consistent with the "make whole" purpose of Title VII, plaintiff is also entitled to interest on this amount at the rate of 8%, compounded semiannually, from the day the position of Recreation Director was filled in 1975 to the date of trial. Although plaintiff would normally also be entitled to receive the Recreation Director position, plaintiff requested at trial that, given the passage of time, Kincaid not be "bumped" and the job given to her. Plaintiff is also entitled to receive interest on the amount awarded as required by 28 U.S.C. § 1961, as amended, from this date until the sum is paid.

9. Plaintiff, as prevailing party, is entitled to recover her costs and expenses, including reasonable attorneys' fees. A separate order is being entered herewith concerning fees, costs, and expenses.

10. Plaintiff is entitled to injunctive relief prohibiting future discrimination by the defendant on the basis of sex in its hiring practices.

A judgment will be entered based upon these findings of fact and conclusions of law.