Reginald O. WALLACE, Appellant,

v.

DEBRON CORPORATION, Appellee.

No. 73–1729.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 14, 1974.

Decided March 28, 1974.

Rehearing Denied May 1, 1974.

Steven K. Brown, Liberman, Baron & Goldstein, St. Louis, Mo., for appellant.

Edwin S. Fryer, St. Louis, Mo., for appellee.

Joseph Ray Terry, Jr., Director, St. Louis U. School of Law, St Louis, Mo., for Mid-America Equal Employment Opportunity Center.

James P. Scanlan, Washington, D. C., for Equal Employment Opportunity Commission.

Before HEANEY and BRIGHT, Circuit Judges, and DENNEY, District Judge.*

HEANEY, Circuit Judge.

Reginald Wallace, a black man, was employed as a welder by Debron Corporation for approximately four years. He was discharged pursuant to a company rule [1] on October 6, 1971, after his

---

\* ROBERT V. DENNEY, United States District Judge, District of Nebraska, sitting by designation.

1. The Company rule provides:
    Violation of the following rules will result in disciplinary action which may include discharge:

\*    \*    \*    \*    \*    \*

    Permitting garnishment proceedings to be brought against the Company for more than one indebtedness within a twelve-month period.

wages were garnished for the second time within a twelve-month period.

After filing a charge with the Equal Employment Opportunity Commission and receiving a right to sue notice, he filed an action in the District Court alleging that Debron's garnishment policy violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (1972).[2] The District Court granted Debron's motion for summary judgment and Wallace appealed.[3]

■■ The arguments of both parties are based upon what they consider to be the proper interpretation of the Supreme Court's holding in Griggs v. Duke Power Company, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Wallace contends that the District Court erred in granting summary judgment because genuine issues as to material facts remain. He asserts that under Griggs, facially neutral employment practices, which substantially restrict the employment opportunities available to blacks, violate Title VII unless the practices are proven to be required by business necessity. He argues that in this case, the facts crucial to the court's application of the business necessity doctrine are still at issue.

Debron, for the purposes of summary judgment, concedes that its facially neutral garnishment policy subjects a disproportionate number of blacks to discharge from employment.[4] It asserts, however, that under Griggs, only those facially neutral employment practices which have the effect of *perpetuating prior racially discriminatory practices* are violative of Title VII absent a showing of business necessity. It argues that since there is no allegation of prior discrimination by Debron, the business necessity doctrine is irrelevant.

Wallace cites Johnson v. Pike Corporation of America, 332 F.Supp. 490 (C. D.Cal.1971), to support his interpretation of *Griggs*. That court, in a case which presented the identical question now before us, found that the employer's garnishment policy violated Title VII. Although we do not view *Johnson* as interpreting *Griggs* in the manner suggested by Wallace, we do agree with the reasoning of that court.[5] It recognized, as we do, that in *Griggs*, there was a finding of prior discrimination by the employer, and that the Supreme Court's decision was based on the facts as they were presented in that case. It went on to state, however:

* * * the entire thrust of the opinion is toward a liberal construction of Title VII so as to fully effectuate the congressional mandate to in-

2. On appeal, the appellant has abandoned all other theories of relief urged in the District Court.

3. The Equal Employment Opportunity Commission and Mid-America Equal Employment Opportunity Center, as *amici curiae*, have filed briefs in this matter.

4. The EEOC, in a recently published decision finding a garnishment policy to be racially discriminatory, stated:
* * * A survey of the available information on wage garnishment reveals that * * * the proportion of racial minorities among the group of people who have had their wages garnisheed is significantly higher than the proportion of racial minorities in the general population * * *. The fact that blacks and other racial minorities are so often subject to garnishment action is related to the fact that they are to a disproportionate extent from the lower social and economic segments of our society. Approximately three times the proportion of blacks as

compared with whites are in the lower end of the economic scale. Therefore, a policy of discharging an employee solely because his or her wages have been garnisheed will have an adverse disproportionate impact upon minority group persons as a class. Any employment practice which has a disproportionate effect on minority group persons will be found to be in violation of Title VII unless it can be shown to be demonstrably related to successful job performance and is otherwise predicated and supported by considerations of business necessity. * * *
EEOC Decision No. 74–27, 2 CCH Empl. Prac.Guide ¶ 6396, at 4061–4062 (1973).

5. The [*Johnson*] court's initial determination that the practice of discharging for wage garnishment could be held discriminatory followed straightforwardly from the Supreme Court's groundbreaking interpretation of Title VII in *Griggs*.
85 Harv.L.Rev. 1482, 1485 (1972).
*But see*, 37 Mo.L.Rev. 705 (1972).

sure members of minority groups equal employment practices which act as "built-in headwinds" for minority groups. The fact that many of the early cases interpreting Title VII were concerned with whether Congress intended the Act to invalidate present and continuing consequences of past discrimination cannot blind us to the fact that the Act also proscribes the present effects of present discrimination.

Johnson v. Pike Corporation of America, *supra* at 494.

We read *Griggs* in the same light and find support for this interpretation of Title VII in its language:

* * * What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification.

Griggs v. Duke Power Company, *supra* 401 U.S. at 431, 91 S.Ct. at 853.

This view of Title VII is supported by the Ninth Circuit.

* * * In *Griggs*, a residue of discrimination was found to have resulted in disfavored workmen being locked into job stagnation caused by earlier discriminatory employment practices. No such finding was specified or required in this case. * * * Historical discrimination need not be shown in order to obtain relief from discrimination in fact, regardless of its cause or motive. * * *

Gregory v. Litton Systems, Inc., 472 F.2d 631, 632 (9th Cir. 1972).

It is also supported by the EEOC. *See*, note 4, *supra*.

For us to take any position other than one which requires that all employers remove all artificial, arbitrary, and unnec-

essary racial barriers to employment would be inconsistent with the broad purposes of Title VII; would permit many employers (those with no past history of discrimination and new employers) to erect such barriers; and would result in an inequitable and unequal enforcement of the Act.

Debron asserts that there can be no Title VII violation when dismissal from employment is caused by an employee's voluntary conduct undertaken with knowledge of the consequences. It cites McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in support of its contention. We reject the assertion: First, Debron concedes for the sake of this appeal that its garnishment policy will subject a disproportionate number of blacks to discharge. No comparable concession was made in *Green*. Second, there is no evidence in the record that garnishments generally are the result of voluntary conduct undertaken with the knowledge of the consequences, and we are unwilling to take judicial notice that such is the case in the face of studies indicating that poverty is the root cause of many garnishments. *See*, note 4, *supra*. Third, *Green* did not involve an employment practice neutral on its face which had a disparate effect on blacks. Rather, *Green* involved a situation where the reason given for refusing to hire him—the commission of illegal acts specifically directed against the company—was found to be justified by the necessity of defendant's business. Thus, the issue in *Green* was whether the asserted reason was pretextual.

We have considered the District Court's statement that adoption of the position we have taken here would be inconsistent with 15 U.S.C. § 1674 [6] and would, in effect, prohibit an employer from discharging any employee for successive garnishments.

---

6. 15 U.S.C. § 1674 provides:
   (a) No employer may discharge any employee by reason of the fact that his earnings have been subjected to garnishment for any one indebtedness.

(b) Whoever willfully violates subsection (a) of this section shall be fined not more than $1,000, or imprisoned not more than one year, or both.

**677**

We are not persuaded that our decision is inconsistent with § 1674. That section is intended to prevent discharge because of garnishment for one indebtedness. The penalty provisions of the section are criminal in nature and are indicative of the disfavor with which Congress views garnishments generally rather than of an intent to authorize all other garnishments.[7]

Nor are we persuaded that our decision will effectively prevent employers from discharging any employee who has been the object of successive garnishments. It simply prohibits an employer from establishing a policy with respect to successive garnishments which will have a disparate effect on blacks.

## BUSINESS NECESSITY

In support of its motion for summary judgment, Debron submitted the affidavit of Mr. Larry Rehma, plant personnel director for Mississippi Valley Structural Steel Company, a division of Debron. He states in part:

The establishment of said company policy was motivated solely and exclusively by the sound business judgment of the officers of Mississippi Valley Structural Steel Company, based upon their prior experience, and the prior experience of said Mississippi Valley Structural Steel Company, that the capability, enthusiasm, efficiency, and quality of performance, of any employee whose wages are garnished more than once in a twelve-month period noticeably decrease on account of

his wages being partially withheld for the benefit of his creditors; at the same time, there is an increase in expense, inconvenience, and annoyance to Mississippi Valley Structural Steel Company.

We view Rehma's affidavit as simply raising a number of factual questions essential to the resolution of the business necessity issue. The conclusory statements imply that the company may be able to prove the actual impact of garnishment on employees, but Rehma did not provide the District Court with basic supportive facts which establish a business necessity justification as a matter of law.

We decline the invitation of the appellant to attempt to set the parameters of the business necessity doctrine in this opinion. We do note, however, that Debron must at least prove that its garnishment policy fosters employee productivity[8] and that there is no "* * * acceptable alternative that will accomplish that goal 'equally well with a lesser differential racial impact.' * * *". United States v. St. Louis-San Francisco Railway Co., 464 F.2d 301, 308 (8th Cir. 1972) (en banc), cert. denied, 409 U.S. 1116, 93 S.Ct. 913, 34 L.Ed.2d 700 (1973). The factual questions which will determine if Debron's garnishment policy has overriding business justification are at issue in this case. It was, therefore, error for the District Court to grant summary judgment.

Reversed and remanded.

7. While consumer credit has enjoyed phenomenal growth over the past 20 years, so have personal bankruptcies. Title II of your committee's bill restricting the garnishment of wages, will relieve many consumers from the greatest single pressure, forcing wage earners into bankruptcies. H.R.Rep.No.1040, 90th Cong., 1st Sess. (1967) [U.S.Code Cong. & Ad.News, pp. 1962, 1963 (1968)].

8. See, 85 Harv.L.Rev., supra at 1487.