**Eileen M. KRENZER, on behalf of herself and others similarly situated, Plaintiff,**

v.

**Gerald R. FORD, as President of the United States, et al., Defendants.**

**Civ. A. No. 76–1345.**

United States District Court,
District of Columbia.

April 7, 1977.

---

Lawrence Speiser, Washington, D. C., for plaintiff.

John R. Dugan, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION

GESELL, District Judge.

This is a class action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* Plaintiff, on behalf of female attorneys and female physicians who are not veterans, alleges sex discrimination based on a determination by the Administrator of the Veterans Administration that he will submit only names of veterans for appointment as members of the Board of Veterans Appeals. Since such appointments are by statute subject to presidential approval, President Ford was also named as a party. Plaintiff fully pursued her administrative remedies but was unsuccessful and this suit ensued. Plaintiff filed a motion for partial summary judgment and defendants cross-moved to dismiss or for summary judgment. The basic issue before the Court is whether or not in the light of undisputed facts the Administrator's "veterans only" policy constitutes sex discrimination under the Act or, alterna-

tively, transgresses the Equal Protection standards of the Fifth Amendment.[1]

Congress has created a Board of Veterans Appeals within the Veterans Administration. Its members, not to exceed 50 in number, are required to be "appointed by the Administrator with the approval of the President." 38 U.S.C. § 4001. Board members are included within the Civil Service at a GS–15 rating. In 1945 General Omar Bradley, then Administrator of Veterans Affairs, recommended to President Truman that vacancies on the Board "should be filled by the appointment of veterans with war-time service because of the character of the work and the constituency served." President Truman approved this recommendation and since September, 1945, the policy of the Administrator has been to exclude non-veterans from consideration for appointment as associate Board members. Each successive President has approved the names of the veterans submitted by the Administrator.

The Board conducts hearings and disposes of appellate claims involving benefits under the laws administered by the Veterans Administration. It is divided for operational purposes into sections or panels each consisting of one physician and two attorneys. Members of the Board for the last ten years have been selected from staff attorneys and medical advisors on the staff of the VA. There is no system for applying for Board membership. No formal announcements specifying qualifications, standards and requirements are issued. The settled policy, subject to few exceptions, is to appoint only attorneys who have been on the staff for two years and are veterans, and only staff physicians who are veterans. In the period 1933–1945, 39 Board member appointments were approved, including three non-veteran females and two non-veteran males. From 1945–1969, all Board members were veterans. In the entire period from 1945 to 1975,

of the 121 Board members appointed only three were women. It is clear from evidence developed by discovery that females considered qualified were not appointed because of the "veterans only" policy.

■ The initial consideration is whether Title VII is applicable in light of an express exception which provides:

> Nothing contained in this subchapter shall be construed to repeal or modify any Federal . . . law creating special rights or preferences for veterans. 42 U.S.C. § 2000e–11.

Defendants contend that under *Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974), the policy approved by President Truman, which has never been revoked or reaffirmed, is a proper basis for limiting eligibility to veterans within the spirit of the exception. However, in *Mancari* the Bureau of Indian Affairs gave promotion preference to American Indians pursuant to a specific congressional enactment which the Supreme Court held had not been implicitly repealed by Title VII. The Truman-Bradley policy at issue here was not created pursuant to statute, was never formalized by regulation or by publication in the *Federal Register*, has been modified in the course of time, and does not rise to the dignity of a preference statute. Thus *Mancari* is not in point and the statutory exception to Title VII is inapplicable.

■ The Administrator also suggests that Title VII is inapplicable because it applies only to agencies and he is acting pursuant to presidential, not agency, policy.[2] However, the papers submitted with the Administrator's motion for summary judgment simply do not support the conclusion that the "veterans only" policy is a presidential directive. There is no indication that the Truman-Bradley exchange was ever made known to subsequent Presi-

1. *Brown v. GSA*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), establishes Title VII as the sole statutory remedy against the Government for race or sex discrimination in employment. It does not foreclose plaintiff's constitutional rights.

2. This assumes that the President's role in the appointment process would insulate the agency role from the strictures of Title VII. In view of the analysis that follows, it is not necessary to consider the validity of this assumption.

dents, and certainly no indication that it has been consciously implemented by a President since the passage of the Civil Rights Act. Presidents have apparently regularly followed the recommendations of the Administrator, who is the appointing official, and appointments made by the Administrator have been approved automatically, subject only to FBI check. Finally, Administrators have not adhered scrupulously to the "policy," particularly insofar as it makes wartime service a decisive factor. The erosion and unsettled nature of the claimed presidential directive is apparent. In short, the actions of the Administrator in appointing members to the Board, a GS–15 Civil Service position, must be viewed on the merits as agency action without regard to the so-called presidential policy.

While there clearly is no intent to discriminate shown by the papers, the standard which governs the Court's consideration is delineated in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). The United States Court of Appeals for the District of Columbia Circuit well summarized this crucial ruling as follows:

> . . . even in the absence of any discriminatory intent by an employer, federal equal opportunity law forbids the use of job qualifications or tests which have a disproportionate impact upon certain protected groups of job applicants, unless the employer can demonstrate that those requirements are job related—*i. e.*, justified by the needs of the business and shown to be valid measures of future job performance. *Coopersmith v. Roudebush*, 170 U.S.App.D.C. 374, 377, 517 F.2d 818, 821 (1975).

■ The inquiry therefore is two-fold. First, does the appointing practice of the Administrator under challenge here have a disproportionate impact upon a protected group? This must be answered in the affirmative.

Since more men than women, in absolute numbers, are disqualified by the "veterans only" policy, the defendants strongly argue that this policy does not have a dispropor-

tionate impact on women. The Court rejects this contention. *Griggs, supra.* While the statistics presented in this case are not entirely satisfying, they indicate that close to 40 percent of all male attorneys and physicians are wartime veterans, while less than one percent of such female professionals are similarly situated. And it does not appear that removal of the "wartime" requirement would have an appreciable effect upon these statistics. Further, this marked disparity is the result of many federal statutes and regulations that have for a long time sharply limited the opportunity of women to serve in the Armed Forces. *See Anthony v. Commonwealth of Massachusetts*, 415 F.Supp. 485, 489–490 (D.Mass. 1975). It is obvious, and this Court so holds, that the "veterans only" requirement, not founded on any statute, has a disproportionate impact upon the class of women before the Court. It places female attorneys and female physicians at a marked disadvantage in seeking consideration for appointment to the Board and has caused the Board to be composed almost entirely of men. *See, e.g., Mieth v. Dothard*, 418 F.Supp. 1169 (M.D. Ala.1976); *Wallace v. Debron Corp.*, 494 F.2d 674 (8th Cir. 1974).

The second inquiry is whether the existing requirement is sufficiently job related to constitute an absolute precondition to appointment despite its impact on women. Defendants contend that both the nature of the work and the VA's constituency dictate an affirmative response. Plaintiff argues to the contrary and the countervailing considerations on each side of this issue must be analyzed.

The Board has many duties. Well over 50 percent of the appeals to the Board between the years 1972 and 1976 involved issues related to military service, including whether to grant additional compensation for wounds, or whether a death is service connected. In certain instances conditions of military service are explicitly emphasized as bearing on the decision. *See* 38 U.S.C. § 354(a) and (b) and 38 CFR 3.303(a), 3.304(e), 3.305(c) and 3.306(b). Additionally, members of the Board deal personally with

veterans and their families. It is the court of last resort for the personal problems that veterans bring before it. So it is not surprising that affidavits from veterans' organizations state that it is important to veterans that those making the final decisions be themselves veterans.

On the other hand, five non-veteran attorneys have been detailed to serve as acting members of the Board for varying periods of time and non-veteran physicians are often detailed to the Board in an acting capacity for substantial periods. Some of the work of the Board, moreover, clearly involves issues as to which past military service is irrelevant, and it is noted that panels hearing cases involving military experience are not selected to assure that they are composed of members with the relevant wartime or service background. It is also apparent that wartime service is no longer a prerequisite, but that only some kind of military service is required.

Once the adverse impact of a job requirement has been demonstrated, the burden of proof shifts to the employer who must show that the requirement is job related. *Griggs v. Duke Power, supra.* This is a particularly heavy burden where the requirement, if not met, is an absolute bar to employment and not simply one of several relevant considerations because under such circumstances the employer must show that there is not a reasonable alternative that will accomplish the same purpose with a lesser differential impact. *Wallace v. Debron Corp., supra* at 677; cf. *Anthony v. Commonwealth of Massachusetts, supra* at 499. Defendants have failed to meet this burden. They have not shown that the character of the work or the constituency served necessitates that each and every person appointed to the Board be a veteran.

Plaintiff's motion for partial summary judgment is granted. It is hereby declared that the policy of the Veterans Administration and the Administrator to appoint only veterans to the Board of Veterans Appeals violates Title VII of the Civil Rights Act of 1964, as amended. It is thus not necessary to reach the Fifth Amendment issues. The complaint is dismissed as to President Ford. Counsel to submit an appropriate form of declaration and order.

A status conference is set for 9:30 a.m. on April 18, 1977, in Courtroom No. 6, to consider, among other things, what further proceedings, if any, are necessary.