**Sybil BROWN, Anne Caldwell, and Sally McRae, Plaintiffs-Appellees,**

v.

**PUGET SOUND ELECTRICAL APPRENTICESHIP & TRAINING TRUST, Defendants-Appellants.**

**Sybil BROWN, Anne Caldwell, and Sally McRae, Plaintiffs-Appellees,**

v.

**PUGET SOUND CHAPTER NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, a corporation; and, Local 46, International Brotherhood of Electrical Workers, Defendants-Appellants.**

No. 83–3865.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 3, 1984.

Decided May 3, 1984.

Abraham Arditi, Seattle, Wash., for plaintiffs-appellees.

Hugh Hafer, Hafer, Cassidy & Price, Seattle, Wash., for defendants-appellants.

Before WRIGHT, TANG, and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

The International Brotherhood of Electrical Workers Local No. 46 [Local] and the Puget Sound Chapter of the National Electrical Contractors Association [NECA] appeal from the judgment awarding back pay, costs, and attorney's fees to Sybil Brown, Anne Caldwell, and Sally McRae [Appellees] in a Title VII action. We are asked to decide whether the district court was correct in adopting the special master's conclusion that "the veterans age credit here violated Title VII ...." and was the cause of Appellees' injuries.

## PERTINENT FACTS

In 1969, Local and NECA formed the Puget Sound Electrical Joint Apprenticeship and Training Trust [JATC] for the purpose of supporting programs to train electrical apprentices and journeymen. Applicants to the JATC's construction electricians apprenticeship program were considered eligible on the basis of age between their 18th birthday and their 26th birthday.

In compliance with standards first suggested by the federal government in 1945, the JATC adopted an age credit exception for veterans. In 1966 and 1971, after Title VII was enacted, the Department of Labor's Bureau of Apprenticeship Training notified JATCs around the country that standards for admission to their apprenticeship programs could contain a veterans' age credit. In 1971, the Bureau of Apprenticeship Training approved National Apprenticeship and Training Standards which included an age credit for veterans. In this respect, the Special Master found that "[i]n establishing and maintaining its veterans age credit policy, the JAC relied in good faith on policies endorsed by the federal government."

The JATC adopted the age credit because it agreed with the federal government's position that persons who served their country might be foreclosed from apprenticeship training because of their age. Young men and women who joined the armed forces would be unable to apply to the JATC program during their military term. Therefore, they would have fewer years to apply to the program than men and women who remained in the civilian labor force until they were 26 years of age. The JATC attempted to give veterans an equal opportunity to apply for apprenticeship training by allowing them to deduct one year from their age for each year spent in military service. This age credit, however, was limited to a maximum of four years. A veteran with more than four years of service thus would still have fewer years to apply for an apprenticeship than would non-veterans.

The following examples illustrate the impact of the veterans' credit on applicants to the program.

One. A 22 year old veteran with four years of service would have no more than *eight* years to apply.

A 22 year old non-veteran would have a total of *eight* years to apply.

Two. A 25 year old veteran with eight years of service would have a total of *four* years to apply.

A 25 year old non-veteran would have had a total of *eight* years to apply.

Three. A 29 year old veteran who entered the armed services at age 25 and served four years would have no more than a total of *eight* years to apply.

Sybil Brown and Sally McRae did not apply for admission to the construction electricians apprenticeship program until they were over 25 years of age. Anne Caldwell applied when she was 25, but failed to complete the application before her 26th birthday. Appellees had not served in the armed forces prior to filing their application. Thus, they did not qualify for an age credit. Their applications were denied.

In 1977, Appellees filed charges with the Equal Employment Opportunity Commission [EEOC] against Local, NECA and the JATC [Appellants] claiming the age credit afforded to veterans had a disparate impact on women.

In 1978, the JATC abolished its veterans' age credit and raised the maximum age for all applicants to 29. Brown and Caldwell then reapplied to the construction program and were accepted. McRae reapplied to the construction program and was placed at number 34 on the waiting list. In 1978, a male who was number 108 on the list was offered admission to the apprenticeship program before McRae. She filed no charge with the EEOC over the incident.

After receiving right to sue notices from the EEOC regarding their disparate impact claim, Appellees brought a consolidated action in federal court. McRae additionally raised a discriminatory treatment claim

based on the waiting list bypass. The evidence in this case was presented to a magistrate sitting as a special master. Appellants raised jurisdictional objections to the lower court's entertaining either Appellees' disparate impact claim or McRae's discriminatory treatment charge. The special master rejected the jurisdictional objections, and recommended that the district court find for Appellees on both the disparate impact and discriminatory treatment allegations. He also recommended finding the JATC the agent of Local and NECA, and assessing attorney's fees and back pay against Appellants. The district court adopted the special master's recommendations. Because we conclude that the lower court lacked jurisdiction over McRae's discriminatory treatment claim, and that the veterans' age credit was not the cause of Appellees' alleged injuries, we reverse.

### DISCUSSION

A. *Jurisdiction of the District Court*

We first address Appellants' attack on the jurisdiction of the district court to enter judgment in this matter. Appellants present two arguments in support of their request that we dismiss the Appellees' claims.

First. Appellees filed their claims in the district court prematurely in violation of the 180-day waiting period prescribed by statute.

Second. McRae's claim of discriminatory *treatment* in 1978 was not reasonably related to her 1977 EEOC charges of disparate *impact.*

1. *Validity of the Right to Sue Notice*

■ Title VII places primary responsibility for disposing of employment discrimination complaints with the EEOC in order to encourage informal conciliation of employment discrimination claims and foster voluntary compliance with Title VII. *Ong v. Cleland,* 642 F.2d 316, 319 (9th Cir.1981). Title VII plaintiffs must therefore exhaust their administrative remedies before seeking judicial relief from discriminatory ac-

tion. *Id.* at 320. Congress enacted 42 U.S.C. § 2000e–5(f)(1) to protect aggrieved individuals from undue delay. This statute provides that if the EEOC has neither filed a Title VII action nor entered into a conciliation agreement to which the complainant is a party within 180 days from the date the charge is filed, the complainant must be notified that he or she may now bring a civil action. If specified EEOC officials determine it is improbable that the EEOC will take such final action within 180 days, 29 C.F.R. § 1601.28(a)(2) authorizes the EEOC to issue a right to sue notice before 180 days elapse.

The EEOC issued Appellees a right to sue notice prior to the expiration of 180 days, pursuant to section 1601.28(a)(2), based on their disparate impact charge against the JATC. Appellants argue that the Regulation authorizing early right to sue notices is invalid. They maintain that the 180-day period provided for in 42 U.S.C. § 2000e–5(f)(1) is a mandatory requirement designed to assure the EEOC's primary role in handling employment discrimination claims. This court upheld the validity of right to sue notices issued prior to the expiration of 180 days in *Bryant v. California Brewers Ass'n.,* 585 F.2d 421 (9th Cir.1978), *vacated and remanded on other grounds,* 444 U.S. 598, 100 S.Ct. 814, 63 L.Ed.2d 55 (1980). *See also Saulsbury v. Wismer & Becker, Inc.,* 644 F.2d 1251, 1257 (9th Cir.1980) (right to sue notice issued before 180 days elapsed was valid). Therefore, under the law of this circuit, the district court did not err in assuming jurisdiction over Appellees' disparate impact claim.

2. *Reasonable Relation of the Discriminatory Treatment Claim*

■ When an employee seeks judicial relief for incidents not listed in his original EEOC charge, a federal court may assume jurisdiction over the new claims if they are "like or reasonably related to the allegations of the EEOC charge." *Oubichon v. Northern American Rockwell Corp.,* 482 F.2d 569, 571 (9th Cir.1973). If closely

related incidents occur after a charge has been filed, additional investigative and conciliative efforts would be redundant. " 'To require a second "filing" by the aggrieved party ... would serve no purpose other than the creation of an additional procedural technicality.' " *Ramirez v. National Distillers & Chemical Corp.*, 586 F.2d 1315, 1320 (9th Cir.1978) citing *Love v. Pullman Co.*, 404 U.S. 522, 526, 92 S.Ct. 616, 618, 30 L.Ed.2d 679 (1972).

Where claims are *not* so closely related that agency action would be redundant, the EEOC must be afforded an opportunity to consider disputes before federal suits are initiated. Bypassing the administrative process under such circumstances frustrates the policy of encouraging informal conciliation and fostering voluntary compliance with Title VII. McRae filed the following charge with the EEOC:

> The respondent discriminates against women in the administration of, and in admission to, the apprenticeship program. I am a woman. On August 16, 1977, I tried to apply for the commercial electrical apprenticeship program. My application was rejected because I was over 25 years old and had no military service. I believe this age requirement is discriminatory.

Any investigation of whether McRae's application was rejected as the result of disparate *impact* would not have encompassed her subsequent claim that when she reapplied to the program she was subjected to *intentional* sex discrimination. " 'It is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.' " *Serpe v. Four-Phase Systems, Inc.*, 718 F.2d 935, 937 (9th Cir.1983), citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970). McRae's failure to exhaust her administrative remedies before the EEOC precluded the presentation of her discriminatory treatment claim in federal court.

## B. *Necessity of Proof of Discriminatory Impact*

The special master concluded that "the veterans age credit here violated Title VII ... because the veterans age credit prevented [Appellees'] admission to the construction program in 1977." This conclusion was adopted by the district court.

Appellants contend that the veterans' age credit did not have a disparate impact on women. This issue presents a question of law which we must review de novo. *See Vesey v. United States*, 626 F.2d 627, 629 (9th Cir.1980) (review of damage judgment under Federal Tort Claims Act).

Title VII makes it "an unlawful employment practice for any ... joint labor-management committee controlling apprenticeship or other training ... to discriminate against any individual because of his ... sex ... in admission to, or employment in, any program established to provide apprenticeship or other training." 42 U.S.C. § 2000e–2(d).

Title VII does not prohibit *laws* that expressly discriminate against non-veterans. In 42 U.S.C. § 2000e–11, Congress provided as follows: "Nothing contained in this subchapter shall be construed to repeal or modify any Federal, State, Territorial, or local law creating special rights or preferences for veterans." Appellants argue that "[a]gainst the back drop of pro-veteran legislation and explicit protection of such policies in Title VII, it beggars belief that Congress intended to prohibit private voluntary efforts to equalize employment opportunity for veterans as constituting illegal sex discrimination."

■ Appellants' reliance on section 2000e–11 is misplaced. As pointed out by Appellees, "no law creates the JAC's veterans age credit." The exception to Title VII contained in section 2000e–11 is expressly limited to any "Federal, State, Territorial, or local law" which may have a discriminatory effect on non-veterans. The JATC's age credit was adopted by a non-governmental private organization. The fact that it was encouraged to do so by an agency

that is a part of the executive branch of the federal government cannot convert the veterans' age credit into an act of Congress. Furthermore, as we shall discuss below, the veterans' age credit does not have a discriminatory impact on non-veterans. Thus, section 2000e–11 would be inapplicable even if Congress had required veterans' age credits in apprenticeships, because no preference is afforded.

■ The district court concluded that the JATC veterans' age credit "had a clear-cut disparate impact on women." In reaching this conclusion the court found that 21.5 percent of all males and only 0.4 percent of all females in the area covered by the apprenticeship program are veterans, and 8.0 percent of all males and 0.2 percent of all females are Viet Nam or post-Viet Nam era veterans. Since veterans could apply to the program until a later age than non-veterans, the court determined that men were given preferential treatment in applying for apprenticeship training. This analysis ignores the fact that veterans could not receive apprenticeship training during the years they served in the military, whereas non-veterans could apply for training between their 18th and 26th birthdays.

Contrary to the district court's conclusion, the veterans' age credit did not prevent the admission of women to the apprenticeship program. Under the challenged program women had a maximum of eight years to apply for apprenticeship training. The existence of the age credit did not give veterans more than eight years to apply for the apprenticeship program. Thus, the existence of the age credit had no adverse effect whatsoever on women. Had the age credit not been created, however, veterans would have had less time to apply for apprenticeship training than non-veterans of the same age. The program did not give a less-qualified veteran preference over a better qualified non-veteran. The sole effect of the age credit was to give some veterans the same amount of time to apply for apprenticeship training as was available to non-veterans. As can be seen from the examples set forth above, the age credit program failed to give the veteran with more than four years service in the armed forces the same opportunity available to the non-veteran.

Contrary to Appellees' contention, the disparate impact analysis developed in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), is inapplicable here. In *Griggs*, an employer required a high school education or a passing score on a standardized intelligence test as a condition of employment or transfer at its plant in Draper, North Carolina. Both requirements operated to disqualify Blacks at a higher rate than Whites. The court noted that "[b]asic intelligence must have the means of articulation to manifest itself fairly in a testing process. Because they are Negroes, petitioners have long received inferior education in segregated schools." *Id.* at 430, 91 S.Ct. at 853. The education and testing requirements thereby "operate[d] as a 'built-in headwind' " to employment opportunity for Blacks. *Id.* at 432, 91 S.Ct. at 854. The requirements had not been shown to predict successful performance of the jobs for which they were required. Because Title VII requires the removal of "unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification", *id.* at 431, 91 S.Ct. at 853, the education and testing score requirements were found to violate Title VII in *Griggs*.

The JATC's veterans' age credit, by contrast, cannot be characterized as a headwind or barrier to employment opportunity since it had no effect on the number of years that non-veterans could apply for apprenticeship training.

Appellees correctly observe that three federal trial courts "have applied a disparate impact analysis to veterans *preference claims*" (emphasis added). These cases do not support the judgment of the district court. Rather, they involve attempts to prefer veterans over equally qualified non-veterans.

In *Bailey v. Southeastern Area Joint Apprenticeship Committee*, 561 F.Supp.

895, 912 (N.D.W.Va.1983), the court found that the practice of giving veterans extra points on their interview scores had a disparate impact on women. In *Krenzer v. Ford*, 429 F.Supp. 499, 502 (D.D.C.1977), the facts showed that the Administrator of the Veterans Administration would submit only veterans' names for appointment to the Board of Veterans Appeals. The court held "that the 'veterans only' requirement ... ha[d] a disproportionate impact upon the class of women [female attorneys] before the court." In *Woody v. City of West Miami*, 477 F.Supp. 1073, 1078 (S.D.Fla. 1979), the court was called upon to decide whether a city's policy of giving preference to veterans who had served in the armed forces for 20 years in the hiring of police officers had a disparate impact on women. In each of these cases veterans were given a *preference* not granted equally qualified women who were non-veterans.

In the instant case, at the time Appellees applied, they were no longer qualified for the training program because they exceeded the age limit. The extension of that limit for veterans, who were unable to apply while in military service, had no effect on these Appellees. Appellees had the opportunity to apply for apprenticeship training for eight years. The age credit gave veterans no more than eight years to apply. The age credit's sole effect was to afford veterans the same opportunity to apply for the apprenticeship training available to non-veterans.[1] We therefore hold that the district court erroneously applied a disparate impact analysis to these facts. Judgment for the appellees is reversed. They suffered no disadvantage.

Because we conclude the veterans' age credit did not affect Appellees' opportunity to be hired, we need not decide whether the JATC operated as Local's and NECA's agent. The judgment for Appellees, includ-

ing back pay, costs, and attorney's fees, is REVERSED.

EUGENE A. WRIGHT, Circuit Judge, dissenting:

I dissent from that portion of the majority opinion holding that the veterans age credit has no prohibited disparate impact on women. I would affirm the district court's conclusion on this issue.

Title VII prohibits facially neutral employment practices that have a discriminatory impact on a protected class of employees and are not justified by business necessity. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335–36, 97 S.Ct. 1843, 1854–55, 52 L.Ed.2d 396 (1977). Women are a protected class of workers.

The majority concludes that appellants' program had no discriminatory impact on nonveterans. It says that the age credit did not prevent acceptance of women for the apprenticeship program, but gave veterans the same eight years in which to apply that all nonveterans enjoyed. It concludes that the disparate impact analysis of *Griggs v. Duke Power Co.*, 401 U.S. 424, 431–32, 91 S.Ct. 849, 853–54, 28 L.Ed.2d 158 (1971), is inapplicable here because the age credit did not erect a barrier to an apprenticeship.

The effect of the veterans age credit was that, of all 26 through 29-year-old applicants, only those who were veterans could be eligible for apprenticeships. With respect to applicants aged 26 through 29, the age credit limited to veterans was a barrier to an apprenticeship. In the area covered by the program, 8% of males and 0.2% of females are Viet Nam or post-Viet Nam era veterans. The age credit had a disparate impact on women.

---

1. The dissent notes that the JATC afforded no similar waiver for other disabilities, "[f]or example, a temporary physical disability or a tour with the Peace Corps or VISTA ...." No evidence was presented that these Appellees were members of any such group. No evidence was presented that more men than women belong to

such groups. We therefore cannot reach the interesting legal question that might be presented by such a case, and confine ourselves to addressing the issue at hand: that is, did the age credit have a discriminatory impact on these Appellees because they were non-veterans?

The majority says that the district court ignored the fact that veterans could not apply for the program while they were in the military, while nonveterans could apply. Veterans did not enjoy a preference, the majority asserts, they just were not penalized for serving their country.

Nonveterans also may have suffered disabilities preventing them from applying for an apprenticeship between the ages of 18 and 25. For example, a temporary physical disability or a tour with the Peace Corps or VISTA could prevent application.

Veterans were given special treatment through the age credit. Because that treatment had a disparate effect on women, it was in violation of Title VII.

I would affirm.