Lynda D. GIBBS, Nancy R. Meyer, Kay A. Simmons, Rosemarie Sowell, and Judith A. Thompson, Plaintiffs-Appellees,

v.

PIERCE COUNTY LAW ENFORCEMENT SUPPORT AGENCY, CITY OF TACOMA and its Police Department, and Pierce County and its Sheriff's Office, Defendants-Appellants.

CA No. 85–3754.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 9, 1986.

Decided March 27, 1986.

⊂⇒616

Richard Milham, Tacoma, Wash., for plaintiffs-appellees.

Patricia Parfitt, Asst. City Atty., Joseph F. Quinn, Tacoma, Wash., for defendants-appellants.

Before WRIGHT, CANBY and WIGGINS, Circuit Judges.

CANBY, Circuit Judge:

The Pierce County Law Enforcement Support Agency, the City of Tacoma and its Police Department, and Pierce County and its Sheriff's Office (collectively "LESA") appeal the district court's judgment for Lynda D. Gibbs, Nancy R. Meyer, Kay A. Simmons, Rosemarie Sowell, and Judith A. Thompson (plaintiffs). The district court, after a bench trial, found that LESA violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* by setting and maintaining the wages of "records supervisors"—the position held by plaintiffs—at an improperly low level based solely on the sex of plaintiffs.

On appeal, LESA challenges the district court's decision on procedural grounds and contests the district court's substantive finding of intentional discrimination. We

find LESA's arguments to be without merit. Accordingly, we affirm the district court's judgment.

## FACTS

LESA, the Law Enforcement Support Agency of Pierce County, was originally formed in 1974 by the combination and consolidation of the communications and dispatch sections of the Tacoma Police Department and the Pierce County Sheriff's Office. Formerly, these law enforcement agencies had used commissioned officers ("communications sergeants") to supervise the communications and dispatch sections of their organizations. After the consolidation, LESA staffed the supervisory positions of its communications section with noncommissioned individuals ("communications supervisors") who had previously worked as dispatchers or communications officers for either organization. LESA's communications supervisors all were male and were paid at the same rate as the former communications sergeants.

In 1978, LESA expanded to replace the Tacoma Police Department and the Pierce County Sheriff's Office records sections with a single consolidated section. Formerly, each law enforcement agency had utilized a combination records-identification section which was comprised of records clerks, identification officers, and supervisory sergeants ("records sergeants"). Records sergeants and communications sergeants had earned the same salary.

Upon consolidation, the position of records sergeant was discontinued. LESA's new records section was comprised of records supervisors and records specialists. The salary of the records supervisors, all female, was set at 27% less than that of the former records sergeants and 15% more than that of the records specialists employed by LESA.

Plaintiffs Gibbs, Simmons and Sowell are former records clerks in the Pierce County Sheriff's Office records-identification section. Plaintiffs Thompson and Meyer are former records clerks of the Tacoma Police Department records-identification section. All plaintiffs except Sowell became records supervisors at the time of the establishment of LESA's records section.

On April 16, 1981, the Automotive and Special Services Union, Local No. 461 (Union) filed on behalf of "Aggrieved Female Members" a complaint with the Equal Employment Opportunity Commission (EEOC) charging LESA with discrimination based on sex.

On April 27, 1981, plaintiff Sowell became a records supervisor.

On September 30, 1982, the EEOC issued a determination dismissing the Union's complaint and notifying the Union of its right to sue. Shortly thereafter, the Union and plaintiffs brought suit against LESA in the United States District Court of the Western District of Washington. The district court found, *inter alia*, that the jobs of records supervisor and records sergeant were substantially equal and that LESA had engaged in intentional discrimination against plaintiffs from 1978 until the present. Damages were awarded based on the cumulative difference in pay between the records supervisors and the communications supervisors for the years 1979 through 1984. Attorneys' fees and costs were also awarded.

## DISCUSSION

### I. *The District Court's Jurisdiction*

 LESA initially contends that the district court lacked subject matter jurisdiction over the present action on the ground that plaintiffs failed to file a timely charge with the EEOC. LESA argues that under 42 U.S.C. § 2000e–5(f) satisfaction of section 2000e–5(e)'s 180–day filing requirement is a jurisdictional prerequisite.[1]

In *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234

---

**1.** 42 U.S.C. § 2000e–5(e) requires a charge of discrimination under Title VII to be filed with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred." *Id.*

(1982), the Supreme Court held that the requirement of filing a timely charge with the EEOC was not jurisdictional in nature. *Id.* at 393, 102 S.Ct. at 1132. Rather, the 180–day filing requirement of section 2000e–5(e) was intended to act as a statute of limitations and was subject to the defenses of waiver, estoppel and equitable tolling. *Id.* at 393, 394, 102 S.Ct. at 1132, 1133. LESA's jurisdictional arguments based on sections 2000e–5(e) and 2000e–5(f) are therefore subsumed by its arguments, discussed *infra*, that plaintiffs' claims are time-barred. *See Boyd v. United States Postal Service*, 752 F.2d 410, 414 (9th Cir. 1985).

## II. *Statute of Limitations*

LESA next contends that plaintiffs' claims are time-barred by 42 U.S.C. § 2000e–5(e). LESA argues that Sowell failed to file any charge with the EEOC, as required by section 2000e–5(e), and that the charges filed by the Union on behalf of Gibbs, Thompson, Meyer, and Simmons were not filed within 180 days of any unlawful employment practice, also as required by section 2000e–5(e). We reject both arguments.

### A. *Sowell's failure to file*

■ LESA's contention that Sowell failed to file a charge with the EEOC is being raised for the first time on appeal.[2] Because the issue of Sowell's failure to file does not raise jurisdictional considerations, *see* Part I *supra*, the defense of estoppel is applicable to LESA's contention. *Zipes*, 455 U.S. at 393, 102 S.Ct. at 1132.

"As a general rule issues which have not been raised in the trial court will not be reviewed on appeal." *Scott v. Pacific Maritime Association*, 695 F.2d 1199, 1203 (9th Cir.1983) (citing authority). Variance from the general rule requires "exceptional circumstances" where "injustice might other-

wise result." *Frommhagen v. Klein*, 456 F.2d 1391, 1395 (9th Cir.1972). Inasmuch as LESA offers no explanation of its failure to raise the issue in the district court, *see United States v. Plechner*, 577 F.2d 596, 598 (9th Cir.1978) (without explanation or exceptional circumstances courts will not deviate from general rule of declining issue) and no "exceptional circumstances" are present, we conclude that LESA is estopped from raising the "Sowell issue" here.

### B. *The 180–day limitations period*

■ LESA contends that plaintiffs' claims of wage discrimination were not filed within 180 days of any unlawful employment practice. Plaintiffs' current salaries, LESA argues, are merely the present effect of an act—the decision to hire plaintiffs at a given salary—that took place more than 180 days prior to the filing of plaintiffs' charge with the EEOC. Under *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), claims based on the "present effect [of] a past act of discrimination," are time-barred. *Id.* at 558, 97 S.Ct. at 1889. Thus, LESA argues, the district court erred by holding that LESA's biweekly wage payments to plaintiffs constituted a practice currently actionable under Title VII.

This court has squarely rejected LESA's theory of discriminatory wage payments. In *Bartelt v. Berlitz School of Languages of America, Inc.*, 698 F.2d 1003 (9th Cir.), *cert. denied*, 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983), we considered the identical argument and wrote:

> We disagree. The policy of paying lower wages to female employees on each payday constitutes a "continuing violation." We conclude that the claims are timely because each plaintiff filed charges with the EEOC within three hundred days of

**2.** LESA's Amended Answer states as an affirmative defense, "[P]laintiffs have not properly filed with the Equal Opportunity Employment Commission or any other commission to determine the probable cause in this matter." Although this statement might have been broad enough to allow LESA to raise the issue of Sowell's failure to file with the EEOC at trial, it does not in itself constitute the raising of the issue; Sowell's specific failure is not mentioned. No further attempt was made to raise the issue.

a payment of allegedly discriminatory wages.

*Id.* at 1004–05 (citations and footnote omitted). By finding that each payment of discriminatory wages constituted a "continuing violation," we implicitly rejected the LESA's characterization of wage payments as merely the present effect of a past act. As each plaintiff in the instant action filed charges with the EEOC within 180 days of a payment, we conclude that plaintiffs' action is not time-barred.

### III. *Exhaustion of Administrative Remedies*

■ LESA contends that plaintiffs are barred from raising their employment discrimination claims because they failed to exhaust Title VII's administrative remedies. Although plaintiffs filed a charge with the EEOC, it was explicitly based on LESA's failure to pay plaintiffs and communications supervisors equally for substantially equal work.[3] LESA argues that plaintiffs' failure to present to the EEOC their principal litigation theory—that LESA discriminated by failing to pay plaintiffs and *records sergeants* equally—should bar plaintiffs from relying on that theory at trial. We find this argument meritless.

Plaintiffs and LESA agree that the standard for deciding whether plaintiffs exhausted their administrative remedies is whether the theory actually relied on at trial was "like or reasonably related to the allegations of the EEOC charge." *Brown v. Puget Sound Electrical Apprenticeship & Training Trust,* 732 F.2d 726, 729 (9th Cir.1984) (quoting *Oubichon v. Northern American Rockwell Corp.,* 482 F.2d 569, 571 (9th Cir.1973)), *cert. denied,* —— U.S. ——, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985). Under this standard, we must determine whether the case presented at trial is within "the scope of an EEOC investigation

which can reasonably be expected to grow out of the charge of discrimination." *Serpe v. Four-Phase Systems, Inc.,* 718 F.2d 935, 937 (9th Cir.1983) (quoting *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970)); *accord Puget Sound Electrical Apprenticeship & Training Trust,* 732 F.2d at 730.

In their EEOC complaint, plaintiffs alleged that they were paid less than communications supervisors because of their sex. A reasonably thorough investigation of this allegation would naturally encompass the question whether LESA was justified in disturbing the historical pay parity between records sergeants and communications sergeants when it created the uncommissioned positions that corresponded to these jobs. Thus, while not specifically required by the plaintiffs' EEOC complaint, an investigation of the relation between the position of the plaintiffs and the records sergeants could "reasonably [have been] expected to grow out of the charge of discrimination." *Serpe,* 718 F.2d at 937. This relation was the core of plaintiffs' case at trial.

The Seventh Circuit in *Roesel v. Joliet Wrought Washer Co.,* 596 F.2d 183 (7th Cir.1979), reached a similar conclusion in a case presenting parallel facts. In *Roesel,* the plaintiff's EEOC complaint was based on the salary increase provided to her immediate successor. At trial, however, plaintiff based her case on the theory that she was underpaid relative to contemporaneous male employees in another department. Noting that "[c]ourts have consistently required a liberal reading of EEOC charges," the Seventh Circuit found that proving discrimination by the latter means "did not ... take the case outside of the scope of the EEOC charge." *Id.* 187.

---

**3.** The complaint to the EEOC stated in part:
　　Records supervisors—all females—are being paid less wages than are the communications center supervisors—all males—for substantially equal work.

　　·　　·　　·　　·　　·

　　We believe the record supervisors—four females—have been discriminated against be-

cause of their sex, because ... [t]here is no substantial difference in terms of the skills, efforts and responsibilities in the two positions in question [and the] current minimum wage range for records supervisor is $7.38 to $8.14 per hour; for communications supervisor is $11.68 to $12.26 per hour.

## IV. *Intentional Discrimination*

### A. *Standard of review*

The finding of intentional discrimination is a finding of fact. *Anderson v. City of Bessemer,* —— U.S. ——, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Hence, this court must apply the clearly erroneous test when reviewing the district court's finding of intentional discrimination. *Id.;* Fed.R. Civ.P. 52(a). *See also Kimbrough v. Secretary of the United States Air Force,* 764 F.2d 1279, 1281 (9th Cir.1985) ("After a Title VII case is fully tried, we review the decision under the clearly erroneous standard applicable to factual determinations").

Under the clearly erroneous test, we must affirm the district court's determination unless "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Pullman-Standard v. Swint,* 456 U.S. 273, 284–85 n. 14, 102 S.Ct. 1781, 1787–88 n. 14, 72 L.Ed.2d 66 (1982); *see also United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). "[I]f the district court's account of the evidence is plausible in light of the record viewed in its entirety," we must affirm, regardless of how we would have weighed the evidence had we been the triers of fact. *Anderson v. City of Bessemer,* 105 S.Ct. at 1512 (1985).

### B. *Merits*

■ We conclude that the district court's determination that LESA intentionally discriminated against plaintiffs is not clearly erroneous. Plaintiffs' salaries were set 27% below that of their predecessors, the records sergeants. Given the evidence in the record concerning the similarity between the duties of the records supervisors and the records sergeants, and the discrepancy between the manner in which the pay scale was set for records supervisors and other LESA employees, the district court's finding of determination was plausible. Hence, we will not disturb it.

■ *1. Comparison of the Duties of Record Supervisors and Record Sergeants.*—The district court found that the work, skill, effort, and responsibility required of a records supervisor in LESA was substantially equal to that required of a records sergeant in the Tacoma Police Department and the Pierce County Sheriff's Office.[4] We cannot say that this finding was implausible. Plaintiffs Thompson and Meyer testified that as LESA records supervisors they performed all the material duties that their predecessors at the Tacoma Police Department had performed. Although LESA was able to establish that sergeant supervisors at the Tacoma Police Department had superior qualifications and more extensive training, it was unable to demonstrate that these extra qualifications and skills were relevant to their duties as sergeant supervisors.[5] Furthermore, the testimony of former sheriff Lyle Smith and the testimony of former city manager Ronald Skaggs concerning the extra duties of records sergeants was undermined by their admissions of lack of personal knowledge of those facts. On this record, we conclude that the district court's findings regarding the relative duties of LESA records supervisors and Tacoma `Police Department

---

**4.** We note in passing that this was not a *necessary* finding. Unlike a violation of the Equal Pay Act, 29 U.S.C. § 206(d), a violation of Title VII based on wage discrimination may be found even in the absence of a higher-paying position that is equal to or substantially equal to the one held by the plaintiff. *County of Washington v. Gunther,* 452 U.S. 161, 178–79, 181, 101 S.Ct. 2242, 2252–53, 68 L.Ed.2d 751 (1981).

**5.** Richard Sokolowski, Personal and Labor Relations Director for the City of Tacoma, testified that records sergeants for the Tacoma Police Department might be rotated out to perform the duties of an identification officer or patrol officer. He admitted, however, that he was not aware how common it was for a sergeant to perform the duties of an identification officer. Furthermore, the district court was entitled to reject Sokolowski's bald statement that the potential to be rotated out to perform the duties of a patrol officer, a completely different position, was job-related.

records sergeants were not clearly erroneous.

The district court's finding that LESA records supervisors and Pierce County Sheriff's Office sergeant supervisors performed substantially the same duties, though less clearly supported by the record, is still plausible. Plaintiffs Gibbs, Simmons and Sowell all testified that their duties as records supervisors in LESA and the duties of their predecessors in the Pierce County Sheriff's Office did not materially differ. This testimony was contradicted by the testimony of Bureau Chief John H. Shields and Captain Steve A. Poythress. In cases of conflicting testimony where credibility is necessarily at issue, we must be "especially reluctant" to set aside the findings of the trial court. *See* C. Wright & A. Miller, *Federal Practice and Procedure* § 2586 at 737 (1971); *see also Anderson v. City of Bessemer*, 105 S.Ct. at 1513 ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error."). Accordingly, we conclude that the district court's acceptance of the testimony of plaintiffs Gibbs, Simmons and Sowell concerning their former supervisors' duties was not clearly erroneous.

■ 2. *LESA's Alleged Nondiscriminatory Reasons for the Wage Disparity Between Records Supervisors and Records Sergeants.*—Personnel and Labor Relations Director Sokolowski testified that the wages of plaintiffs were based upon the prevailing market rate of pay for records supervisors. Upon cross-examination, however, Sokolowski stated that the only formal study by LESA of the prevailing market rate for records supervisors was conducted in 1980, two years after the the establishment of plaintiffs' salaries. Furthermore, the record shows that LESA consistently paid its employees *above* the prevailing market rate.[6] Thus it was not clearly erroneous for the district court to reject LESA's "prevailing market rate" explanation of the pay disparity between records supervisors and records sergeants.

Ronald D. Skaggs, Director of LESA, testified that while inspecting LESA's files he discovered a memorandum stating that the pay scale of records supervisors was established by adding a differential to the proposed pay scales of LESA's records specialists. This memorandum was not entered into evidence, nor was it made available to plaintiffs before trial, nor was its author called to testify concerning its accuracy. Furthermore, LESA offered no explanation how the amount of salary differential was determined nor why the salaries of records supervisors were established by this particular method.[7] Skaggs' wage differential theory is at best one explanation of how plaintiffs' salaries were set. In light of the strong statistical evidence suggesting the existence of discrimination[8] and the testimony supporting the conclusion that the plaintiffs performed substantially the same duties as their male predecessors at 27% less pay, the district court's finding of intentional discrimination was not clearly erroneous.

## CONCLUSION

Plaintiffs filed their claims in a timely manner and satisfied the requirement of

---

**6.** The average salary for positions in LESA's records and communications departments as of 1982 was 14.7% above the market mean. No position except the plaintiffs' was paid less than 5% above the market mean. Plaintiffs' salaries were 0.2% above the market mean.

The parties do not dispute that LESA's 1982 comparative wage study accurately reflects the salaries of LESA employees relative to their counterparts in other cities for the entire period of LESA's existence.

**7.** There is no evidence in the record that the "differential" method of salary computation was ever applied by LESA to any position other than plaintiffs'.

**8.** The average position in LESA receives 14.7% above the mean market rate. Communications supervisors, the only all male position at LESA, receives 24.5% above the mean market rate, as did plaintiffs' all male predecessors. Record supervisors, the only all female position receive only 0.2% above the mean market rate.

exhaustion of remedies. The district court's finding of intentional wage discrimination was not clearly erroneous. Plaintiffs presented sufficient evidence that they and their predecessors, the records sergeants, performed substantially equal work. The district court could reasonably conclude that there was no credible nondiscriminatory explanation for the 27% pay disparity between plaintiffs and the records sergeants.

Plaintiffs are entitled to recover reasonable attorneys' fees and costs incurred on appeal. 42 U.S.C. § 1988; Fed.R.App.P. 39(a). Plaintiffs will submit their application for an award of fees to this court in accordance with Ninth Cir.R. 14(g). Plaintiffs' request for double costs is denied.

AFFIRMED.